UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KOGER, INC., | : |
| Plaintiff, | : Civil Action No. 08-4175 (SRC) |
| | : |
| v. | : |
| | : |
| MARIAN KLCO, JANA POTOCNAKOVA, | : |
| MARTIN MADEJ, MIKULAS | : |
| KLASVOSKY, and IVAN MESARC, | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
AND IN SUPPORT OF CROSS-MOTION FOR REMAND**

---

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Plaintiff Koger, Inc.

TABLE OF CONTENTS

Page 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

ARGUMENT

I.      THE DEFENDANTS WERE SERVED PROPERLY
        AND THERE IS NO MERIT TO THEIR MOTION
        TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

II.     PLAINTIFF COMPLIED WITH NEW JERSEY
        COURT RULE 4:4-4(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

III.    DISMISSAL IS INAPPROPRIATE ON THE GROUNDS
        OF FORUM NON CONVENIENS BECAUSE THE DEFENDANTS
        AGREED TO JURISDICTION AND VENUE IN NEW JERSEY. . . . . . . . . . . . . .   11

        A.      New Jersey is Presumed to be a Convenient Forum  . . . . . . . . . . . . . . . . . . . .   13

        B.      Defendants Have Waived Their Right To Contest the
                Convenience of This Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

                1.      The Defendants cannot avoid their obligations to try this action
                        in New Jersey by questioning the enforceability of the
                        agreements generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

                2.      Plaintiff has not waived the Forum Selection Clause . . . . . . . . . . . . . .   18

        C.      The Defendants Have Failed To Show That The Slovak
                Republic is an Adequate Alternative Forum . . . . . . . . . . . . . . . . . . . . . . . . .   18

        D.      The Gulf Oil Factors Strongly Weigh in Favor of
                New Jersey as the Appropriate Forum for this Dispute . . . . . . . . . . . . . . . . . .   19

                1.      The Private Factors  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Table of Contents, Con't.

(a)     Relative ease of access to sources of proof . . . . . . . . . . . . . . .   19

(b)     Availability of compulsory process . . . . . . . . . . . . . . . . . . . . . .   20

(c)     The cost of obtaining attendance of willing witnesses. . . . . . . .   20

(d)     View of the premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

(e)     Enforcement of any judgment . . . . . . . . . . . . . . . . . . . . . . . . .   21

(f)     Other private factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

2.     The Public Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

(a)     Administrative factors - delay. . . . . . . . . . . . . . . . . . . . . . . . . .   21

(b)     Jury duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

(c)     Local interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

(d)     The forum's familiarity with governing law . . . . . . . . . . . . . .   21

IV.     THE COURTS OF THE STATE OF NEW JERSEY HAVE
        PERSONAL JURISDICTION OVER THE DEFENDANTS. . . . . . . . . . . . . . . . . . .   22

V.      THE COMPLAINT STATES A CLAIM FOR BREACH OF
        CONTRACT AND TORTIOUS INTERFERENCE . . . . . . . . . . . . . . . . . . . . . . . . .   25

        A.     The Standard For Granting A Motion To Dismiss For
               Failure To State A Claim Is High . . . . . . . . . . . . . . . . . . . . . . . . .   25

        B.     The Complaint Contains Factual Allegations Sufficient to State A Cause of
               Action for Tortious Interference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

        C.     The Non-Compete Claim is Meritorious. . . . . . . . . . . . . . . . . . . . . . . . .   27

VI.     THIS ACTION SHOULD BE REMANDED TO THE
        SUPERIOR COURT OF NEW JERSEY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

ME1 7766558v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allegheny General Hospital v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000) ........................25

*Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560 (D.N.J. 2000) ................12

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ...........................................................17

*Coast Cities Truck Sales, Inc. v. Coast Cities Leasing, Inc.*, 912 F. Supp. 747 (D.N.J. 1995) ..................................................................................................................................................26

*Corinthian Media, Inc. v. Yelsey*, 1992 WL. 47546 (S.D.N.Y. 1992) .........................................15

*Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459 (D. Del. 1998) ................................................17

*FRC Intern., Inc., v. Taifun Feuerloschgeratebauund Vertriebs GmbH*, 2002 WL. 31086104 (N.D. Ohio 2002) .......................................................................................................10

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...........................................................................13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................................................25

*In re Hypodermic Products Antitrust Litigation*, 2007 WL. 1959225 (D.N.J. 2007) ...................25

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ..............................................................................................................................................22

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) ................................................12

*Lauro Lines v. Chesser*, 490 U.S. 495 (1989) ..............................................................................12

*National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964) ....................................................22

*Northrup King Co. v. Compania Productora Semilas Algodoneras Selectas, S.A.*, 51 F.3d 1383 (8th Cir. 1995) ......................................................................................................................10

*Palomino v. Channel Home Ctrs.*, 668 F.2d 721 (3d Cir. 1981) ...................................................23

*Park Inn International, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370 (D.N.J. 2000) ..............................................................................................................................................16

*Pennsylvania Orthopedic Associate v. Mercedes-Benz A.G.*, 160 F.R.D. 58 (E.D.Pa. 1995) ..............................................................................................................................................10

ME1 7766558v.1

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ........................................22

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)........................................................13

*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992)...........15

*Ronar Inc. v. Wallace et al.*, 649 F. Supp. 310 (S.D.N.Y. 1986)..................................12

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ....................................................15

*Scheuer v. Rhodes*, 416 U.S. 232, (1974) ..............................................................25, 19

*The Plum Tree, Inc. v. Stockment*, 488 F.2d 753 (3d Cir. 1973) ..................................13

*Tocci v. Antioch University*, 2007 U.S. Dist. LEXIS 59706 (D.N.J. 2007)...................23

*TUC Electronics, Inc. v. Eagle Telephonics, Inc.*, 698 F. Supp. 35 (D. Conn. 1988) .............13, 19

*Wall Street Aubrey Golf, LLC v. Aubrey*, 2006 WL. 1525515 (3d Cir. 2006)...............28

*Windt v. Qwest Communications International, Inc.*, 529 F.3d 183 (3d Cir. 2008)......................20

## STATE CASES

*Creative Bus. Decisions, Inc. v. Magnum Commc'ns. Ltd. Inc.*, 267 N.J. Super. 560 (App. Div. 1993) ......................................................................................................23

*EZ Sockets, Inc., v. Brighton-Best Socket Screw Manufacturing Inc.*, 307 N.J. Super. 546 (Ch. Div. 1996) ..............................................................................................26

*Gotlib v. Gotlib*, 399 N.J. Super. 295 (App. Div. 2008)................................................18

*LaMorte Burns & Co., Inc. v. Walters*, 167 N.J. 285 (2001).........................................26

*Lebel v. Everglades Marina, Inc.*, 115 N.J. 317 (1989).................................................23

*Printing Mart-Morristown v. Sharp Electrics Corp.*, 116 N.J. 739 (1989) ...................26

## PRELIMINARY STATEMENT

The Defendants have provided no competent basis for releasing them from the operation

of the exclusive forum selection clause contained in the agreements they executed with the

Plaintiff. The language of the provision is clear and unambiguous:

> **Governing Law.** This Agreement shall be governed by, construed and enforced
> in accordance with the laws of the **State of New Jersey, USA** without regard to
> its conflicts of laws provisions. Jurisdiction and venue is limited in any
> proceeding by the Company or Employee to enforce their rights hereunder to any
> court or arbitrator geographically located in **Bergen** County, **New Jersey**.

(emphasis in original).

This lawsuit was commenced to address the Defendants' (a) breach of their employment

agreements, (b) abuse of the Plaintiff's trust and confidence in order to line their own pockets,

and (c) conspiring with the disloyal former manager of the Plaintiff's subsidiary to compete

against it. Unable to defend their actions on the merits, the Defendants instead have again shown

they think nothing of violating their contractual obligations with the Plaintiff. The removal of

this action to Federal Court and attempt to have it dismissed on the grounds of *forum non*

*conveniens* contravenes directly the exclusive forum selection clause. The Defendants worked

for the Plaintiff for years in accordance with the terms of the employment agreements and

received all the benefits thereof, only to now seek to have the agreements declared void when it

suits their needs.

While the Defendants' counsel attempts to paint a picture of naïve, uneducated, and

uninformed clients in order to void the exclusive forum selection clause, the Plaintiff challenges

this characterization and submits the evidence before the Court shows otherwise. To the extent

the Court considers these disputed factual claims by the Defendants relevant, the Plaintiff

requests an evidentiary hearing. For when the unsupported hyperbole concerning "Slovakian

minimum wage" and "draconian employment terms" is put off to the corner, the question before

the Court is narrow and straightforward -- should the exclusive forum selection clause be enforced. The Plaintiff maintains that both the facts of this case and controlling principles of law compel an affirmative answer.

## STATEMENT OF FACTS

Background

Plaintiff Koger, Inc. ("Koger") is a New Jersey corporation maintaining its principal place of business at 12 Route 17 North, Paramus, New Jersey. Koger is an industry leader in designing and developing back-office software for fund administrators, fund managers, and fund advisors. Koger maintains offices throughout the world. See Certification of Rastislav Sipko, dated October 6, 2008 (Sipko Cert.)¶ 2. Koger was founded in 1995 and provides software solutions to facilitate, among other needs, its clients' shareholder registration requirements. Through its New Transfer Agency System ("NTAS"), clients are provided customized solutions designed specifically to accommodate their business functions and jurisdiction requirements. Sipko Cert. ¶ 8.

NTAS is the leading system solution in the fiercely competitive financial services market and the choice for the majority of off-shore hedge funds. NTAS is currently used by some of the most respected institutions in the fund industry, processing thousands of funds, and reporting on hundreds of billions of dollars in assets. Sipko Cert. ¶ 9. Some of the key points of NTAS, and the reason why it is the industry leader, are the following:

a.    scaled loads can be simple or graduated with unlimited number of tiers.

b.    confidential and anti-money laundering features.

c.    flexible configurations of network topology.

d.    does not require a dedicated IT department.

e.    multi-currency and multi-language capabilities.

f.    equalization module for calculation of incentive fees and series processing.

While the vast majority of the financial services sector has been on-line for years, offshore fund administrators continue to rely upon the telephone, faxes, and paper as an integral

part of their core business processes. This is referred to as "pushing" information and it is both outdated and labor intensive. Sipko Cert. ¶ 11. In response to a changing industry, Koger created its E*TAS system (Electronic Transfer Agency System). E*TAS is designed as a three-tier web application for investors, fund managers, fund advisors, and other related parties promoting online communication, reporting, and trading. E*TAS represents a "pull" philosophy. Sipko Cert. ¶ 12. Unlike other online systems, E*TAS is unique because it is fully integrated with the back-office system. This allows for complete vertical transparency between the back-office transfer agency system and the web front end. Sipko Cert. ¶ 13. Moreover, as the back-office function grows in complexity and new modules are created, E*TAS is able to leverage these modules and bring that functionality online for the benefit of the shareholder, fund manager, fund advisor, or related party. Sipko Cert. ¶ 14.

Protection of Confidential Materials

Koger endeavors to protect the confidentiality of its proprietary information. To that end, Koger's employees are subject to several requirements and limitations. Sipko Cert. ¶ 15. The Defendants were therefore signatories to employment agreements that contained the following provisions. Paragraph 1, Background, recites:

> I acknowledge that such proprietary information, trade secrets, confidential information and goodwill are valuable assets of the Company and the Company has a legitimate interest in protecting itself from disclosure or misappropriation of such information and from interference with its goodwill relationships with its customers.

Paragraph 4, Confidentiality, provides:

> During the term of my employment with the Company and thereafter, I shall not, directly or indirectly, divulge, furnish or make accessible to any other person, business, firm or corporation, or use in any way (other than in the ordinary course or for the benefit of the business of the Company) any Confidential Information, as defined herein, of the Company which I have

4

acquired or become acquainted with as a result of my employment
with the Company, whether developed by me, or by others. . . .The
Confidential Information is the property of the Company and I
acknowledge that the use, misappropriation or disclosure of the
Confidential Information would constitute a breach of trust,
fiduciary duty and could cause irreparable injury to the Company.

Paragraph 7, Non-Solicitation, states:

I agree not to directly or indirectly solicit, for the purpose of
offering or attempting to offer any service, product or other
application which is the same as or similar to the services,
products, or other applications offered or in the process of being
developed by the Company within the last year prior to termination
of my employment with the Company, any of the Company's
customers for a period of one (1) year after termination of my
employment with the Company.  I further agree, for a period of
one (1) year after the termination of my employment with the
Company, that I will not solicit or attempt to solicit any employee
of, or consultant to, the Company, which employee or consultant
had been rendering services to the Company at anytime within the
six month period immediately preceding the termination of my
employment, to leave the employ of, or no longer render service to
or for the benefit of, the Company.

Paragraph 8, Non-Competition[1], states:

During the term of my employment with the Company and for a
period of two years thereafter, I shall not become an officer or
director, or consultant to or be employed by, or otherwise render
services to or on behalf of, a Competing Business.  For purpose of
this Agreement, the term *"Competing Business"* shall mean:  any
person, corporation, partnership, joint venture, association or other
entity engaged in the business of:  (a) software application and web
development for mutual fund and pension plan industry; or (b)
offering or attempting to offer any service, product or other
application which is the same as or similar to the services, products
or other applications offered or in the process of being developed
by the Company within the last year prior to termination of my
employment with the Company.  I acknowledge and agree that the
Company is engaged in business worldwide and that the
marketplace for the Company's products and services is anywhere
mutual fund and pension plan administration is conducted, and
thus the geographic area, length and scope of this noncompetition

---

[1] The agreement executed by Klco differed slightly from the agreement executed by the other
Defendants, in that it did not contain a Non-Competition Provision.

5

provision are reasonable and necessary to protect the legitimate business interests of the Company.

The final provision that is relevant to the present Motions is the exclusive forum selection clause executed by the Defendants:

> **Governing Law**.  This Agreement shall be governed by, construed and **enforced** in accordance with the laws of the **State of New Jersey, USA** without regard to its conflicts of laws provisions. Jurisdiction and venue is limited in any proceeding by the Company or Employee to enforce their rights hereunder to any court or arbitrator geographically located in **Bergen** County, **New Jersey**.

Sipko Cert. ¶ 21 (emphasis in original).  After executing the agreements, the Defendants commenced work on behalf of Koger and received compensation in accordance with their terms and conditions.  Sipko Cert. ¶ 22.  Copies of the Defendants' executed agreements are attached to the Sipko Cert. as Exhibit A[2].

The Defendants and their Improper Conduct

Defendants Marian Klco ("Klco"), Jana Potocnakova ("Potocnakova"), Martin Madej ("Madej"), Mikulas Klasovsky ("Klasovsky"), and Ivan Mesarc ("Mesarc") are all individuals residing in the Republic of Slovakia.  As set forth in detail in their own Certifications, the Defendants are now performing services on behalf of HWM, a direct competitor of Koger. Potocnakova began working for a company providing programming services on behalf of HWM seven months after leaving Koger.  Potocnakova Certification, ¶¶ 12, 17.  Madej began working for a company providing services on behalf of HWM twelve months after leaving Koger.  Madej Certification, ¶¶ 16, 20.  Klasovsky began working for a company providing services on behalf of HWM eleven months after leaving Koger.  Klasovsky Certification, ¶¶ 15, 20.  Mesarc began

---

[2] Koger has been unable to locate the executed version of Madej's agreement.  The copy attached to Exhibit A of the Sipko Cert. is an unexecuted copy that Madej testifies to having signed in paragraph 10 of his Certification.

working for a company providing programming services on behalf of HWM just four months after leaving employment with Koger. Mesarc Certification, ¶¶ 14, 15. Accordingly, Koger maintains the Defendants have breached their contractual obligations and duties to Koger by engaging in business in direct competition with Koger, as well as by necessarily utilizing Koger's confidential and proprietary information. In fact, Potocnakova, Klasovsky, and Mesarc have admitted, under oath, to violating the provisions of the noncompetition clause by rendering services to or on behalf of HWM.

Without coming out and saying it expressly, the Defendants almost seem to be arguing that given the existence of litigation between Koger and HWM in Ireland, the exclusive forum selection clause designating Bergen County, New Jersey that the Defendants are signatories to should be disregarded. To arrive at this conclusion, the Defendants set forth a conspiracy theory that is neither accurate nor relevant.

On or about March 27, 2007, Koger filed a Complaint in the Superior Court of New Jersey, Bergen County, against HWM and James O'Donnell, captioned <u>Koger, Inc. v. James O'Donnell, HWM Financial Solutions Ltd.</u>, Civil Action No. BER-L-2226-07 (the "O'Donnell Action"). O'Donnell had previously been employed by Koger from approximately April 1, 2004 through an effective date of April 30, 2006, as the head of its Dublin, Ireland office. Sipko Cert. ¶ 16. HWM Financial Solutions, Ltd. ("HWM") is a company organized on August 21, 2006, under the laws of Ireland. As stated earlier, HWM is engaged in a business competing directly with Koger. Defendant O'Donnell is a Director of HWM and one of its organizers. Sipko Cert. ¶ 17.

While still employed by Koger, O'Donnell expressed threats and demands designed to have his pay increased, as well as have his title and position elevated. Even though he gave his

resignation in the March of 2006 time period, the time came and passed without any change. The situation between Koger and O'Donnell, however, did not improve. In April of 2006, O'Donnell failed to come to New Jersey for an important meeting of the Company, notwithstanding his prior statements that he would attend and that he recognized the significance of the meeting. O'Donnell's failure to appear at the client meeting was unprofessional and in breach of his obligations to Koger. O'Donnell resigned from Koger effective April 30, 2006. Sipko Cert. ¶ 18. While HWM was not formally incorporated until August 21, 2006, it appears that O'Donnell and others were actively engaged in establishing HWM's business prior to that time. In doing so, O'Donnell breached various contractual and common law obligations to Koger. Subsequent to O'Donnell's resignation from Koger, at least ten Koger employees resigned to work for HWM, including the Defendants. Sipko Cert. ¶ 19.

O'Donnell and HWM removed the lawsuit against them to the United States District Court for the District of New Jersey, where it was assigned Civil Action No. 07-3091 (KSH). That action was dismissed on the basis of *forum non conveniens*. Contrary to the Defendants' assertion throughout their brief, the Court in the O'Donnell Action made no rulings on the propriety of any of the parties' actions. Further absent from the Defendants' brief (and the same counsel represents all the defendants in both cases) is any acknowledgement of the fact that O'Donnell's employment agreement did not contain an exclusive forum selection clause designating Bergen County, New Jersey as the forum. Rather, O'Donnell's agreement contained a provision identifying Ireland as the nonexclusive forum. The distinction is material, which is why the Defendants did not bring it to this Court's attention. Instead, the ruling of the Court in the O'Donnell Action was that it should be dismissed based upon the doctrine of *forum non conveniens*. The same result is not warranted here.

8

## ARGUMENT

### I.

### THE DEFENDANTS WERE SERVED PROPERLY
### AND THERE IS NO MERIT TO THEIR MOTION TO DISMISS

The Defendants were served in accordance with the terms and conditions of the Hague

Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or

Commercial Matters (the "Convention") T.I.A.S. No. 6638, 20 U.S.T. 361, 1969 WL 97765.  On

June 10, 2008, counsel for Koger forwarded a request for service and the Summonses and

Complaints, both in English and Slovak, to the Department of Private and Procedural

International Law, Ministry of Justice, Zupne namestie 13 813 11 Bratislava, Slovak Republic,

being the name and address of the Central Authority for Service of Process in the Slovak

Republic as listed by the United States State Department. http://travel.state.gov/law/info/

judicial_686.html.  Wapner Cert., Exhibit A.  A copy of a printout of the Department of State's

web site setting forth the name and address of the Central Authority for the Service of Process of

the Slovak Republic, in accordance with the Hague Convention, is attached as Exhibit B to the

Wapner Cert.  Thereafter, on June 27, 2008, counsel for Koger sent a communication to the

Central Authority for the Service of Process inquiring if there was a need to provide "any further

information to effect service."  A copy of the June 27, 2008 correspondence to the Central

Authority for the Service of Process of the Slovak republic is attached to the Wapner Cert. as

Exhibit C.  Nothing further was requested.

In addition to misstating the facts relating to the service of process, the Defendants' brief

also misstates the law.  Contrary to the Defendants' assertion that "Article 4 [of the Convention]

requires a state to transmit defective documents," Article 4 actually states that "[i]f the Central

Authority considers that the request does not comply with the provisions of the present

Convention, it shall promptly inform the applicant and specify its objections to the request."

1969 WL 97765 *4. A lack of objection by the Central Authority indicates that service was proper. See Northrup King Co. v. Compania Productora Semilas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389-1390 (8th Cir. 1995) (holding that by not objecting to the documents, "the Central Authority indicated that the documents complied with the Convention...."); Pennsylvania Orthopedic Assoc. v. Mercedes-Benz A.G., 160 F.R.D. 58, 60 (E.D.Pa. 1995) (if no objection from the Central Authority, then service is to be effectuated). Here, the Central Authority of the Slovak Republic did not object to the request in any manner. To the contrary, the Central Authority served the Summonses and Complaints on Klasovsky, Madej, and Mesarc (the "Served Defendants"). The signed acknowledgement of service by Klasovsky is attached as Exhibit D to the Wapner Cert. Although the Certification of Service contains language inserted by the local court stating that certain forms were not provided with the Summons and Complaint, the local court does not maintain jurisdiction over the issue. The failure to object by the Central Authority is dispositive under the Convention. Northrop King Co., 51 F.3d at 1390.

It also needs to be pointed out that the Defendants brought this Motion prior to Koger receiving the Certifications of Service of Medaj and Mesarc; although in accordance with their Certifications, both appear to have been served and voluntarily executed a Certification of Service similar to that executed by Klasovsky. It is well settled that voluntary acceptance of service waives any defect under the Convention. See FRC Intern., Inc., v. Taifun Feuerloschgeratebauund Vertriebs GmbH, 2002 WL 31086104 *10 (N.D. Ohio 2002).

Regardless of any purported defects in service under the Convention, which were nevertheless waived by the failure of the Slovak Central Authority to object to the form of Request and the Served Defendants' voluntary acceptance of service, the Defendants were served. They were served with both the Summonses and Complaints in both English and

Slovak. Accordingly, the Defendants have failed to show any prejudice from the purported

defects in service of process under the Convention and there is no basis for granting their Motion

to Dismiss on these grounds. See <u>Northrup King Co.</u>, 51 F.3d at 1390.

## II.

## PLAINTIFF COMPLIED WITH NEW JERSEY
## <u>COURT RULE 4:4-4(b)(1)</u>

This action was initially commenced in the Superior Court of the State of New Jersey,

Law Division, Bergen County, Docket No. L-6419-07. After removal, it was brought to Koger's

attention that although the Defendants had been personally served in the Slovak Republic with

the Summons and Complaint (making this the second time the Defendants have been provided

with the Summons and Complaint), service had not originally been made in accordance with the

Convention. That matter was accordingly voluntarily dismissed and then a second action was

recommenced. In the original action, Rule 4:4-4(b)(1) Certifications of Diligent Inquiry were

filed verifying that the Defendants could not be located and served in New Jersey. Attached to

the Wapner Cert. as Exhibit E are the Rule 4:4-4(b)(1) Certifications of Diligent Inquiry for the

Defendants. As the Certifications were filed, and the entire basis of the Defendants' current

Motion is that they do not reside in New Jersey, it is absurd and a waste of the Court's time for

the Defendants to claim that they were prejudiced by Koger's failure to certify that they could

not be located in New Jersey.

## III.

## DISMISSAL IS INAPPROPRIATE ON THE GROUNDS
## OF *FORUM NON CONVENIENS* BECAUSE THE DEFENDANTS
## <u>AGREED TO JURISDICTION AND VENUE IN NEW JERSEY</u>

Each of the Defendants entered into an agreement entitled Koger, Inc. Employment

Terms and Conditions. Each agreement consisted of no more than four type written pages and

11

contained an almost identical choice of law, consent to jurisdiction, and exclusive selection of mandatory venue clause:

> **Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the laws of the **State of New Jersey, USA** without regard to its conflicts of laws provisions. Jurisdiction and venue is limited in any proceeding by the Company or Employee [Contractor] to enforce their rights hereunder to any court or arbitrator geographically located in **Bergen** County, **New Jersey**.

(emphasis in original).

Federal law determines the validity of a forum selection clause in a federal diversity case, Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995), and such a clause will be enforced unless there is a strong reason to set it aside. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) *overruled on other grounds by* Lauro Lines v. Chesser, 490 U.S. 495 (1989). In this Circuit, "in accordance with the dictates of the Supreme Court, forum selection clauses are presumptively valid." Cadapult Graphic Systems, Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560. "There can be nothing unreasonable and unjust in enforcing such an agreement; what would be unreasonable and unjust would be to allow one of the parties to disregard it." Ronar Inc. v. Wallace et al., 649 F. Supp. 310 (S.D.N.Y. 1986). The same observation applies with equal force to this matter.

Each of the Defendants agreed that any dispute arising out of their agreements would be litigated in New Jersey and each agreed that New Jersey is a convenient forum for them. By entering into the employment agreements, the Defendants agreed to accept the benefits and comply with the conditions thereof. As discussed below and in the accompanying Sipko Certification, the suggestion that the Defendants did not know what they were signing should be given no credence. See Sipko Cert. at ¶¶ 24, 25, and 26.

A.   **New Jersey is Presumed to be a Convenient Forum**

A determinative factor to be considered at the outset of a *forum non conveniens* motion is

that Koger is a citizen of New Jersey that has filed suit in its home forum.  The Supreme Court

announced sixty years ago that "the plaintiff's choice of forum should rarely be disturbed."  Gulf

Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  Given the commencement of a New Jersey

lawsuit by a New Jersey resident, this level of deference is even higher.   Piper Aircraft Co. v.

Reyno, 454 U.S. 235, 255 (1981).

Koger brought suit in its home state to seek redress for the injury it is incurring here in

New Jersey due to the Defendants' conduct.  Koger's selection of its home forum was valid and

the Defendants can offer no evidence to the contrary.  Nor have the Defendants discharged their

uphill burden of articulating legitimate reasons for the Court to lessen the deference Koger is

entitled to receive.

B.   **Defendants Have Waived Their Right To Contest the Convenience of This Forum**

A valid exclusive forum selection clause is treated as a waiver by the moving party of its

right to assert its own convenience as a factor favoring transfer from the agreed upon forum.  The

Plum Tree, Inc. v. Stockment, 488 F.2d 753, 758 n.7 (3d Cir. 1973).  "A forum selection clause

is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara v.

State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1955).  "[T]he contract designation is conclusive

of the interests of convenience and justice as between the parties. . . ." Electronics, Inc. v. Eagle

Telephonics, Inc., 698 F.Supp. 35, 39 (D. Conn. 1988).

While working on behalf of Koger, each of the Defendants executed a form of agreement

containing a forum and venue selection clause and accepted the benefits provided by Koger.

Sipko Cert., Exhibit A.  Collectively, the Defendants were paid approximately $560,000 by

Koger.  Sipko Cert. at ¶ 27.  However, as soon as their employment with Koger terminated, they

13

breached the non-compete provisions and the confidentiality provisions by performing work for Koger's direct competitor.

Now that the Defendants have been called to task for their actions, they balk at having to comply with the terms of their employment agreements. What the Defendants ignore is the fact that they have contractually agreed to try any dispute in the Superior Court for the State of New Jersey, located in Bergen County, and they have agreed that New Jersey is a convenient forum for the determination of this suit.

### 1.   The Defendants cannot avoid their obligations to try this action in New Jersey by questioning the enforceability of the agreements generally.

The Defendants argue that in order for the exclusive forum selection clause to be enforced, there must be no defense to the enforcement of the agreement generally. The Defendants then list certain factors that they maintain cause the agreements as a whole to be void. This includes the claim that the agreements were void in their entirety due to the "fact" that "each of the removing defendants has shown that his net wage at the time the terms in paragraph 42 of the Complaint allegedly were signed were below the minimum wage." [Defendants' Brief at 20] This allegation is a gross misstatement of the facts as set forth in the Defendants' own Certifications. None of the Defendants certifies as to how many hours they worked or what amount in total salary they received therefore. The only mention of hours worked at all is in the certification of Martin Madej in which he states, "[t]he workday was officially 42.5 hours a week, but we always worked longer hours." Madej Certification at ¶ 6. The lack of specificity as to the alleged wage and hours violation is likely due to the fact that it is specious. The citation by the Defendants to their starting salaries in 2000 is disingenuous. As set forth in the Sipko Certification, the Defendants were well compensated during their tenure with Koger. Klco earned over $240,000.00; Potocnakova over $130,000.00; Mesarc almost

14

$90,000.00; Madej approximately $70,000.00; and, Klasovsky approximately $30,000.00. Sipko Cert. at ¶ 27. If these figures exist in a vacuum, then it only goes to show the failure of the Defendants to establish facts that have legal significance.

The Defendants' entire line of attack suffers from the added consequence that it flies in the face of settled precedent. A party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract. Corinthian Media, Inc. v. Yelsey, 1992 WL 47546 (S.D.N.Y. 1992) (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974)). Instead, the Defendants must show that the clause itself was the product of fraud or coercion. Corinthian Media, Inc., 1992 WL 47546. An attack on the contract as a whole is not sufficient. Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir. 1992). The Defendants have failed to make any such showing.

In an acknowledgment to this high standard, the Defendants did little more than allege in a footnote that there is evidence of fraud and overreaching specific to the exclusive forum selection clause here. [Defendants' Brief at 22 n.4] Therein, the Defendants claim the fact that the agreements were in English, and that the forum selection clause was not specifically pointed out to the Defendants, somehow equates to fraud. This is simply not true.

First, the Defendants are proficient in English. As set forth in the Sipko Certification, all communication between the Defendants and Koger's New Jersey and Dublin offices were conducted in English. Sipko Cert. at ¶ 24; Exhibit B (consisting of English only communications between the Defendants and Koger, over the span of their employment); Exhibit C (the Resume of Jana Potocnakova dated July 12, 2001, which is in English, and two e-mails of Ms. Potocnakova, also in English relating to the receipt and execution by her of the agreement); and Exhibit D (Mr. Madej's Resume of November 20, 2000, stating that he is "active" in English,

15

and an e-mail to Mr. Madej forwarding the agreement for his review and execution). Contrary to Mr. Madej's sworn Certification, the agreement was not given to him on a take it or leave it basis, but e-mailed to him with explicit instruction that, "[i]f he ha[s] any questions regarding it, please do not hesitate to contact Robert Sipko by email." These documents call into question the veracity of the Defendants' Certifications and their contention that they did not speak English at the time they entered into the agreements. The disputed factual assertion should militate against granting the relief sought by the Defendants.

Second, this Court has seen through these very same arguments in a similar case where defendants tried to avoid their contractual obligation to try their dispute in New Jersey. In Park Inn International, L.L.C. v. Mody Enterprises, Inc., 105 F. Supp. 2d 370 (D.N.J. 2000), the defendants had entered into a franchise agreement that contained a forum selection clause mandating jurisdiction and venue in New Jersey. In accordance with the parties' agreement, the plaintiff commenced an action in New Jersey. In an attempt to shirk their contractual consent to the jurisdiction of New Jersey, the defendants alleged that they were fraudulently induced to enter into a contract of adhesion and that accordingly, the forum selection clause of the contract was void. In making this argument, the defendants in Park Inn International, like the Defendants in the case at bar, relied on the fact that they were not native English speakers and were not fluent in English. Id. at 373. The defendants further alleged, like the Defendants in this case, that they executed the agreement without the advice of counsel and without reading it and that they had "no idea" that the agreement contained a forum and venue selection clause. Id.

The Park Inn International court gave those positions no credence and held that the fact the defendants executed a contract in a language with which they were not familiar and without

16

reading it would not relieve the defendants of their obligations thereunder.  According to the

Court:

> A failure to read a contract will not excuse a party who signs it, nor
> will the party's ignorance of its obligation.  Failure to explain the
> terms of an agreement does not constitute fraud, overreaching or
> unconscionability so as to void a forum selection clause....
>
>         *              *             *
>
> [D]efendants here must be charged with notice of the forum
> selection clause and their failure to read it will not excuse them.

Id. at 374-375.

The Park Inn International defendants' final effort was to argue that the forum selection

clause was invalid as it was contained in a contract of adhesion procured by overreaching and

undue pressure.  This argument similarly was given no weight.  "The Court rejects this as well.

That there may not have been actual negotiations over a forum selection clause does not affect its

validity." Id. at 375.  Here, the Defendants tweaked a similar effort by maintaining the forum

selection clauses are overreaching if they are not "neutral."  Again, the Defendants have

misstated the legal standard.  As set forth in Fleming & Hall, Ltd. v. Cope, 30 F. Supp.2d 459,

464 (D. Del. 1998), "[t]he Supreme Court and the Third Circuit Court of Appeals have been

loathe to find forum selection clauses to be the products of overweening bargaining power.  Both

courts have found that the forum selection clauses contained in contracts offered on a take-it or

leave-it basis where there is no negotiation whatsoever were valid." citing, Carnival Cruise

Lines, Inc. v. Shute, 499 U.S. 585, 593-594 (1991).  As the forum selection clause in this case

calls for jurisdiction and venue to be had where Koger has its principal place of business, it is

"hardly an unreasonable choice." See id.

The Defendants make the same arguments that were rejected by the defendants in Park

Inn International:  they did not read the contracts; the contracts were in English; and the forum

17

selection clause was not specifically pointed out to them.  This Court should come to the same

conclusions as it did in Park Inn International and not condone the effort to avoid legitimate

contractual obligations.

    **2.**       **Plaintiff has not waived the Forum Selection Clause.**

    Waiver is the voluntary relinquishment of a known right.  It implies an election by a party

to dispense with something of value, or to forego some advantage which that party might have

demanded or insisted on.  It must be evidenced by a clear unequivocal and decisive act from

which an intention to relinquish the right can be based.  Gotlib v. Gotlib, 399 N.J. Super. 295

(App. Div. 2008).  None of these factors exist here.

    The Defendants have provided no evidence, let alone clear and convincing evidence, that

Koger intentionally waived its right to enforce the exclusive forum selection clause.  The fact

that there has apparently been a filing in the Slovak Republic involving Koger and one of the

Defendants hardly meets this high standard.  Even if Koger has waived the exclusive forum

selection clause as to Mesarc, which it denies, Koger has not even arguably waived the exclusive

forum selection clause as to the other Defendants.

**C.**     **The Defendants Have Failed To Show That The Slovak Republic is an Adequate Alternative Forum**

    Although the Defendants note that the Slovak Republic is a member of NATO and the

European Union, this is by no means sufficient to make it a suitable forum.  The Defendants

state, without citation, that the Slovak Republic has an established civil-law judiciary fully

capable of litigating the contract and non-compete/disclosure claims asserted here.  But the

Defendants were unable to come forward with a single citation to a case discussing Slovakia's

adequacy as a forum.  On a motion to dismiss for *forum non conveniens*, "proof of an adequate

forum is absolutely indispensable".  The Defendants cannot rely on mere argument, but must

provide evidence, such as affidavits of foreign attorneys or legal experts attesting to the

adequacy of the forum. Fiscus v. Combus Finance AG, 2007 WL 4164388 at 7 (D.N.J. 2007).

The Defendants failed to do so.

It bears emphasizing that the agreements contain choice of law provisions mandating

interpretation in accordance with the law of the State of New Jersey, USA.  The Defendants have

made no showing that the Courts of the Slovak Republic would be willing to abide by the

agreement of the parties to interpret the agreements in accordance with New Jersey law.  Even if

they were, there can be no doubt that the Courts of the Republic of Slovakia will not be as

familiar with the law of the State of New Jersey as the Courts located within the State of New

Jersey.

**D.      The Gulf Oil Factors Strongly Weigh in Favor of New Jersey as the Appropriate Forum for this Dispute**

The Defendants entered into valid and enforceable forum selection clauses mandating

New Jersey as the exclusive jurisdiction for any dispute relating to their employment on behalf

of Koger.  As a result, they have waived their right to assert inconvenience as a factor favoring

transfer from the agreed upon forum. The Plum Tree, Inc. v. Stockment, 488 F.2d 754, 758, n.7

(3d Cir. 1973);  Jumara, 55 F.3d at 880; TUC Electronics, Inc. v. Eagle Telephonics, Inc., 698 F.

Supp. 35, 39 (D. Conn. 1988).  As a matter of law, the private factors of the Gulf Oil analysis

weigh in favor of New Jersey retaining jurisdiction of this action.  Even if the Defendants had

not waived their right to assert their convenience, the private factors would still weigh in favor of

the Courts located in New Jersey maintaining jurisdiction.

**1.      The private factors.**

**(a)      Relative ease of access to sources of proof.**  Contrary to the bald assertion in the

Defendants' brief, Koger rejects the statement that "all 'sources of proof' are located in

19

Slovakia." First, and most significantly, Koger and all of its directors, officers, and many of its employees are located in New Jersey. Sipko Cert. at ¶ 2. Moreover, all of its relevant records are located in New Jersey. Id. All evidence relating to the design, function, operation, and security measures taken relating to the NTAS and E*TAS software are located in New Jersey. Reference to the Windt v.Qwest Communications International, Inc., 529 F.3d 183 (3d Cir. 2008) decision cited by the Defendants undermines their position. Therein, the Court observed:

> [T]he physical evidence in this case consists of thousands of documents. The trustees do not challenge the District Court's finding that 'the expenses and complexity associated with such a production and examination appear to be the same regardless of whether the case is litigated in New Jersey or Amsterdam'.

Id. at 194. Documents were involved in the Windt case and documents will be involved in this one as well.

**(b)** **Availability of compulsory process.** The Defendants failed to provide any detail as to what witnesses, if any, have relevant information and reside beyond the subpoena power of New Jersey. The Defendants' entire defense seems to center on the purported invalidity of the agreements, which has been addressed above. As such, the only witnesses with relevant knowledge as to the agreements' terms and conditions and the parties' interpretation of them are the parties themselves.

**(c)** **The cost of obtaining attendance of willing witnesses.** The cost of obtaining the testimony of willing witnesses is not substantially increased by proceeding in New Jersey. As set forth above, the Defendants' defense is that the agreements they entered are invalid. The only necessary witnesses appear to be the parties themselves.

**(d)** **View of the premises.** This factor does not weigh in favor of the Republic of Slovakia, as a more convenient forum.

20

(e)      **Enforcement of any judgment.**  As it is the Defendants who face the possibility

of judgment, this factor cannot be said to negatively effect or harass them.

(f)      **Other private factors.**  As it is the Defendants' unlawful conduct that serves as

the predicate for this action, they should not be heard to complain that the case will be heard

where the brunt of their activity is felt:  New Jersey.  Additionally, the Defendants claim

repeatedly that they are unable to afford the costs of defending this matter in the United States.

However, the facts seem to belie this contention.  Upon being served in the Republic of Slovakia,

the Defendants immediately engaged qualified New Jersey counsel who removed the action from

State Court and filed a substantial motion to dismiss.  The Defendants appear to be very savvy in

the ways of litigation and to have the resources to litigate in the United States.  Furthermore, as

the Defendants have engaged the same counsel as their current employer and co-conspirator

HWM, it appears likely that HWM is the real party funding this litigation.

2.      **The Public Factors.**

(a)      **Administrative factors - delay.**  The Defendants have offered no evidence that

trial in New Jersey would be slower or more cumbersome than trial in the Republic of Slovakia.

(b)      **Jury duty.**      This factor is not a consideration because there is no jury demand.

(c)      **Local interest.**  The locus of this action is New Jersey.  The Defendants worked

for Koger, a New Jersey company.  During this time period, the Defendants breached their

contractual duties to Koger in New Jersey, by working for a direct competitor of Koger.

(d)      **The forum's familiarity with governing law.**      As set forth in the agreements,

they are to be "construed and enforced in accordance with the laws of the state of New Jersey,

USA, without regard to its conflicts of law provisions."  Accordingly, this factor militates in

favor of jurisdiction in New Jersey.  The Defendants have failed to meet their heavy burden of

demonstrating why the deference due to Koger for selecting to bring suit in its home forum and in the venue in which the parties agreed was convenient should be disregarded. This lawsuit was commenced properly in New Jersey and it should remain in this Court.

## IV.

### THE COURTS OF THE STATE OF NEW JERSEY HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS

Unlike some jurisdictional bars, personal jurisdiction can be waived by the parties. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982). As the United States Supreme Court wrote over forty years ago, "it is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court. . ." National Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964). "This rule is no more than a manifestation of the principle that personal jurisdiction is a legal right protecting the individual, not a limitation on the power of the Court." Park Inn International, 105 F. Supp.2d at 374, citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991). Accordingly, "a contractual consent to personal jurisdiction should be enforced. . . ." Id. at 373. The Defendants have contractually consented to personal jurisdiction before the courts located within the state of New Jersey. However, even if they had not, they would otherwise be subject to specific jurisdiction in New Jersey.

Specific jurisdiction can be exercised over a defendant when "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). Under the Due Process Clause, a finding of specific jurisdiction, requires (1) that the defendant have sufficient minimum contacts with the forum, (2) the claim asserted arises out of those contacts, and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." Zippo Mfg. Co. v. Zippo

Dot Com, Inc., 952 F.Supp. 1119, 1123 (W.D. Pa. 1997) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, (1945)).  In order for specific jurisdiction to exist, the defendant, "should reasonably anticipate being haled into court" in the forum.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).

When determining whether a forum has specific jurisdiction rather than general jurisdiction "it is essential to focus on the nature of the claim and the forum's particular interest in the person asserting it."  Palomino v. Channel Home Ctrs., 668 F.2d 721,724 (3d Cir. 1981).  Physical entrance into the forum state is not required to exercise specific jurisdiction.  Tocci v. Antioch Univ., 2007 U.S. Dist. LEXIS 59706, No. 07-1341 (Aug. 15, 2007).

Entering into a contract with a forum resident and facilitating that contract can serve as the basis for personal jurisdiction over a defendant.  In Creative Bus. Decisions, Inc. v. Magnum Commc'ns. Ltd. Inc., 267 N.J. Super. 560, 569-571 (App. Div. 1993), the court found that a foreign defendant had purposely created contacts with New Jersey when it "entered into a carefully structured long term relationship that envisioned continuing and wide reaching contacts."  Similarly, in Lebel v. Everglades Marina, Inc., 115 N.J. 317 (1989), the New Jersey Supreme Court upheld the exercise of personal jurisdiction over a non-resident who entered into an agreement with a New Jersey resident.  The Lebel court noted that the defendant made phone calls to New Jersey and that the agreement was received in New Jersey.  Id. at 329.

In the case at bar, it is undisputed that the Defendants directed their activities into New Jersey by entering into a contract with Koger, a New Jersey corporation.  A review of the Defendants' Certifications show that their contacts with New Jersey went much further than this.  In her Certification, Jana Potocnakova states that she worked for Koger for five years.  Potocnakova Cert. at ¶ 2 and 7.  When she entered into her contract with Koger, she executed it

23

and forwarded it to Koger in New Jersey. Id. at 4. In the course of her work for Koger, she

visited Koger's New Jersey offices for a total of six to nine weeks. Id. at 5. Potocnakova further

states that during her employment with Koger, she "received directions directly from George

Sipko who was in New Jersey. . . . He called []nearly each day, sent faxes, e-mails etc. . . .

Directions were also sent by daily notes of George Sipko." Id.

    In his Certification, Ivan Mesarc admits that he worked for Koger for over five years and

that he entered into a written contract with Koger, which he executed and mailed to Koger in

New Jersey. Mr. Mesarc further testifies that in the course of working for Koger, he twice

traveled to Koger's offices in New Jersey. Mesarc Cert. at ¶¶ 5,7,10, and 13.

    In his Certification, Mikulas Klasovsky testifies that he was offered his job with Koger

by telephone, "calling directly from New Jersey." He further testifies that he executed an

employment contract with Koger and faxed the signature pages to Koger in New Jersey. Mr.

Klasovsky also testifies that in order to perform his work he was in contact with George Sipko

by email, telephone, and daily notes. These communication were with Mr. Sipko in New Jersey.

Klasovsky Cert. at ¶¶ 8,10, and 12.

    In his Certification, Martin Madej testifies that he worked for Koger for almost five

years. He testifies that upon commencing work for Koger, he executed an employment contract

and sent the executed pages to New Jersey via facsimile. He further testifies that during the

period of time within which he worked for Koger he traveled to New Jersey for three weeks and

that while he was working for Koger he received telephone calls from the United States and that

he had to work until 10 pm to "cover NJ time zone." Madej Cert. at ¶¶ 6, 9, 10, and 12.

    As is set forth in the Defendants' Certifications, even if they had not executed contracts

containing forum selection clauses, they clearly have the minimum contacts sufficient for a New

Jersey court to have personal jurisdiction over this matter. The Defendants entered into agreements with what they knew was a New Jersey company, executed the agreements and sent them to New Jersey, and were in daily communication with New Jersey via telephone, fax, and e-mail. Several of the Defendants traveled to New Jersey for weeks a time in order to facilitate their work on behalf of Koger. The Defendants have the minimum contacts necessary to be subject to specific jurisdiction.

V.

**THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT<br>AND TORTIOUS INTERFERENCE**

**A.**  **The Standard For Granting A Motion To Dismiss For Failure To State A Claim Is High**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. "Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." In re Hypodermic Products Antitrust Litigation, 2007 WL 1959225 (D.N.J. 2007), (citing Scheuer v. Rhodes, 416 U.S. 232, 90 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).

**B.**  **The Complaint Contains Factual Allegations Sufficient to State A Cause of Action for Tortious Interference**

In their brief, the Defendants ignore the facts as plead by Koger and the logical inferences that can be drawn therefrom. The Defendants argue that the tortious interference claim is too speculative to survive a 12(b)(6) motion. However, all of the facts necessary to prove a claim for tortious interference have been plead.

25

In order to prevail on a claim for tortious interference, Koger must prove five elements: (i) the existence of a reasonable expectation of economic advantage or benefit belonging or accruing to Koger; (ii) that the Defendants had knowledge of such expectancy of economic advantage; (iii) that the Defendants wrongfully and without justification interfered with Koger's expectancy of economic advantage or benefit; (iv) that in the absence of the wrongful act of the Defendants, it is reasonably probable that Koger would have realized its economic advantage or benefit; and (v) Koger sustained damages as a result thereof. Coast Cities Truck Sales, Inc. v. Coast Cities Leasing, Inc., 912 F. Supp. 747 (D.N.J. 1995); LaMorte Burns & Co., Inc. v. Walters, 167 N.J. 285 (2001); EZ Sockets, Inc., v. Brighton-Best Socket Screw Mfg. Inc., 307 N.J. Super 546 (Ch. Div. 1996); Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989). All of the facts necessary to form a cause of action for tortious interference are set forth in the Complaint:

(i) "Koger has established numerous business relationships with its clients and [] had a reasonable expectation that such relationships would continue in the future," Complaint, ¶ 52;

(ii) as employees and contractors of Koger, it is obvious that the Defendants were aware of these relationships;

(iii) "The Defendants have without privilege been utilizing information and means known to be improper to the detriment of Koger." Complaint, ¶ 53. Further, the Defendants have misappropriated Koger's confidential information and have been using it to assist in their new employment, in competition with Koger. Complaint, Counts II-VI. The Defendants are using the confidential information of Koger wrongfully, in breach of their contractual obligations, to compete against Koger. Complaint, Counts VII-XI;

(iv)  but for the Defendants' conduct, Koger had a reasonable expectation that its business relationships would have continued, Complaint, ¶ 56; and

(v)  as a result of the Defendants' misconduct, Koger has suffered damages in the form of lost business with existing clients and has lot or may lose business opportunities from both existing and prospective clients.  Complaint, ¶ 55.

Accordingly, the tortious interference counts of the Complaint should not be dismissed.

**C.    The Non-Compete Claim is Meritorious**

As set forth in the Complaint, Potocnakova, Madej, Mikulas, Klasovsky, and Mesarc entered into agreements containing language stating:

> During the term of my employment with [Koger], I shall not become an officer or director, or consultant to or be employed by, or otherwise render services to or on behalf of, a Competing Business.  For purposes of this Agreement, the term "*Competing Business*" shall mean: any person, corporation, partnership, joint venue, association or other entity engaged in the business of (a) software application and web development for mutual fund and pension plan industry; or (b) offering or attempting to offer any services, product or other application which is the same or similar to the services products or other applications offered or in the process of being developed by [Koger]. . . .

Complaint, ¶ 41.

The Complaint further alleges that the Defendants have "breached their contractual obligations and duties to Koger by engaging in business in direct competition with Koger." Complaint, ¶ 48.  This allegation was confirmed by the Defendants themselves in their Certifications.  Accordingly, the Complaint sets forth a claim for breach of the non-competition clause of the agreements.  The Defendants' remaining arguments as to the reasonableness of the contract language, Koger's interest in prohibiting its employees from working in direct competition with Koger, and whether the restrictions constitute an undue hardship are

27

inappropriate in the context of a motion to dismiss, as they do not relate to the pleadings and can

only be properly addressed after the completion of discovery.

## VI.

### THIS ACTION SHOULD BE REMANDED TO THE SUPERIOR COURT OF NEW JERSEY

The exclusive forum selection clause in the case at bar states in pertinent part:

> Jurisdiction and venue is limited in any proceeding by the Company or Employee [Contractor] to enforce their rights hereunder to any court or arbitrator geographically located in **Bergen** County, **New Jersey.**

As there is no federal court located in Bergen County New Jersey, "this clause does not allow for

the possibility of any other venue than the State Court of New Jersey sitting in [Bergen]

County." Integrated Health Resources, LLC v. Rossi Psychological Group, P.A., (D.N.J. 2008.)

Integrated Health involved a contract with a forum selection clause stating that the parties

consented to the Courts of the State of New Jersey sitting in Somerset County.  Citing Wall

Street Aubrey Golf, LLC v. Aubrey, 2006 WL 1525515 (3d Cir. 2006), the court held that where

a forum selection clause mandates venue in the courts of a specific county, and there is no

federal court located in the that county, the case must be remanded to the state court.

The same rule should be applied in the case at bar.  The forum selection clause

unambiguously mandates that any action relating to the enforcement of rights under the

agreements must be heard in Bergen County, New Jersey.  As there is no federal court located in

Bergen County, this action should be remanded to the Superior Court of New Jersey, Law

Division Bergen County.

## CONCLUSION

For all of these reasons, the Plaintiff respectfully submits the Court should deny the

Defendants' Motion to Dismiss in its entirety and remand this action to The Superior Court of

the State of New Jersey, Bergen County.


McCARTER & ENGLISH, LLP
Attorneys for Plaintiff Koger, Inc.



By:_____/s/ William D. Wallach_____
　　　　WILLIAM D. WALLACH
　　　　A Member of the Firm


Dated: October 6, 2008