KOGER, INC.,

Plaintiff,

        -vs-

MARIAN KLCO, JANA POTOCNAKOVA,
MARTIN MADEJ, MIKULAS
KLASOVSKY, and IVAN MESARC,

Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No. 08-cv-4175
Hon. Stanley R. Chesler

ORAL ARGUMENT AND
EVIDENTIARY HEARING
<u>REQUESTED</u>

<u>Return Date</u>: October 20, 2008

---

**REPLY BRIEF IN SUPPORT OF REMOVING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND IN
OPPOSITION TO CROSS-MOTION TO REMAND**

---

**DILLON, BITAR & LUTHER, L.L.C.
53 Maple Avenue
P.O. Box 398
Morristown, NJ 07963-0398
973-539-3100**
rbartkus@dbl-law.com

Attorneys for Removing Defendants

ROBERT E. BARTKUS
*Of Counsel and
On the Brief*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................... iii

PRELIMINARY STATEMENT ...................................... 1

LEGAL ARGUMENT ............................................. 5

      POINT I    THE CROSS MOTION TO REMAND SHOULD BE
               DENIED ..................................... 5

           A.   THE CROSS MOTION IS TOO LATE ............... 5

           B.   PLAINTIFF CANNOT BASE REMAND ON A CLAUSE
               THAT IT HAS SELECTIVELY DISREGARDED – BY
               SUING AND THREATENING TO SUE DEFENDANTS
               IN SLOVAKIA ............................... 8

           C.   REMAND IS IMPROPER WHERE PLAINTIFF HAS NOT
               PLACED A SIGNED FORUM CLAUSE FOR MR. MADEJ
               BEFORE THE COURT OR A COMPLETE CONTRACT FOR
               MR. MESARC ................................. 9

           D.   REMAND IS IMPROPER BECAUSE THE "*BREMEN*"
               FACTORS WARRANT NON-ENFORCEMENT OF THE
               FORUM SELECTION CLAUSE ..................... 9

      POINT II  PLAINTIFF HAS WAIVED ITS ABILITY TO RELY
               ON, OR SHOULD BE ESTOPPED FROM RELYING ON,
               THE FORUM SELECTION CLAUSE ................. 12

      POINT III *GULF OIL* REQUIRES DISMISSAL ON *FORUM NON*
               *CONVENIENS* GROUNDS ......................... 13

      POINT IV  PLAINTIFF CANNOT EXCUSE ITS FAILURE TO
               COMPLY WITH THE HAGUE SERVICE CONVENTION
              BY, E.G., USING THE MANDATORY FORMS ......... 15

      POINT V   STATE SERVICE RULES REQUIRE COMPLIANCE
               IN THIS CASE, NOT ANOTHER CASE .............. 18

      POINT VI  THERE IS NO PERSONAL JURISDICTION OVER
               DEFENDANTS .................................. 18

POINT VII THE NON-COMPETE AND TORTIOUS INTERFERENCE
            CLAIMS SHOULD BE DISMISSED .................. 22

CONCLUSION ................................................ 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).....   22

*Bremen v. Zapata Off—Shore Co.*, 407 U.S. 1
(1972) .................................... 4, 6, 9, 12, 13, 19

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S.
585 (1991) ...............................................   12

*Creative Business Decisions, Inc. v. Magnum Commc'ns.
Ltd., Inc.*, 267 N.J. Super. 560 (App. Div. 1993) ........19, 20

*Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207
(3d Cir. 1991) .......................................6, 7, 12

*FRC Int'l, Inc. v. Taifun*, No. 01-7533, 2002 U.S.
Dist. LEXIS 17559 (N.D. Ohio Sept. 4, 2002) .............   18

*Koger, Inc. v. O'Donnell,* R&R No. 07-3091 (D.N.J.
Sept. 28, 2007) .......................................13, 21

*Lebel v. Everglades Marina, Inc.*, 115 N.J. 317 (1989) .. 19, 20

*Morales v. Sun Constructors, Inc.*, 541 F.3d 218
(3d Cir. 2008) ...........................................   11

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) ......................................   18

*Northrup King Co. v. Compania Productora Semillas
Algodoneras Selectas, S.A.,* 51 F.3d 1383 (8th Cir. 1995) ..   *16*

*Park Inn Int'l, L.L.C. v. Mody Ents., Inc.,* 105 F.
Supp. 2d 370 (D.N.J. 2000) ...............................   *10*

*Resource Trade Finance, Inc. v. PMI Alloys, LLC,*
2002 U.S. Dist. LEXIS 14740 (S.D.N.Y. Aug. 12, 2002) ....   *16*

<u>Rules</u>

N.J. Rule 4:4-4(b)(1) ....................................   18

iii

**Statutes**

28 U.S.C. § 1447(c) ..................................... 2, 5

28 U.S.C. § 1746 .......................................5, 23

**Other**

C. Wright, A. Miller, E. Cooper & J. Steinman, Federal
Practice & Procedure 3d § 3739 (2008 Supp.)...............   7

Hague Service Convention ...........................4, 15. 16

H.R. Rep. No. 104-799 ..................................   6

H.R. Rep. No. 100-889...................................   7

PRELIMINARY STATEMENT

"Please be sure to spell my name right."
-Uncertain[1]

The Moving/Removing Defendants are individuals. Real People. They are not "defendants" to be lumped together by Koger, Inc. to avoid specific, critical facts relevant to each.

They worked at Koger in Slovakia at different times and for different periods; they left at different times and under different circumstances. They executed a variety of documents, not all the same and not necessarily the ones that Koger now asks the Court to rely on. Some of them have been sued, or threatened with suit, in Slovakia by Koger – not apparently as Plaintiff now says, but in fact. These people deserve to have their circumstances addressed specifically and individually, to have their situations "spelled" out correctly. When that is done, this Court can come to only one conclusion: remand should be denied and this action should be dismissed.

Looking at the Moving/Removing Defendants as individuals shows that, one by one, remand should be denied and, then, they should not be required to defend this case in New Jersey:

- Martin Madej: There is no forum selection clause signed by him before the Court (see Opp. Brief at 6

---

[1] According to a recent Google search, a variant of this statement is attributed to several entertainment and political personages, including Mark Twain, Mae West and "Boss" Tweed.

n.2),[2] and Plaintiff and the Court cannot assume that he signed a "paper" with a forum selection clause.

- <u>Mikulas Klasovsky</u> was threatened by Koger's lawyer with suit in Slovakia. He has never been to New Jersey or the USA. Mr. Sipko says that he was paid handsomely $30,000.00 from June 2003 to February 2006, less than 32 months, from which <u>he</u> had to pay <u>Koger's</u> employer taxes, leaving him far less than the NJ minimum wage.

- <u>Ivan Mesarc</u>: He has been sued – not "apparently" – in Slovakia by Koger. He was not paid his final paycheck, a legal breach that precludes Koger from enforcing any contract rights. His "signature page" does not match the pages preceding it that contain the relevant contractual provisions; Koger offers no explanation.

Although Plaintiff spends much time referring to Mr. Klco and Ms. Potocnakova, neither had been served by the time the motion or cross-motion was filed and neither has moved to dismiss (or been required to move to dismiss).

The several facts that <u>are</u> common to all Defendants all favor their position on this motion and cross-motion.

First, the cross motion to remand should be denied because Koger is too late. Motions to remand are governed by 28 U.S.C. § 1447(c), which states in relevant part:

---

[2] Mr. Ras Sipko's stating categorically that "every" Defendant signed a contract and that they are "attached" to his certification illustrates his lack of credibility; no agreement for Mr. Madej is attached; and he has no personal knowledge of the Slovakian hiring or signatures. Mr. Madej did not say that he signed a forum clause – only that he signed "papers" that were not explained to him, that he did not understand and that he could not read or negotiate. He has said he did not know what they were, whether any had a forum clause or, even, that they were complete. (Madej Cert. at 4 ¶ 10.)

"A motion to remand the case on the basis of any defect
other than lack of subject matter jurisdiction must be made
within 30 days after the filing of the notice of removal
under section 1446(a)."

Because Plaintiff filed its motion to remand 22 days late, there
is no statutory basis for a remand.

Second, Plaintiff's having sued and threatened to sue some
Defendants in Slovakia has waived the "exclusive forum clause"
on which it relies in both the remand motion and in opposing the
motion to dismiss. An "exclusive" forum clause is not one that
gives the employer the right to sue wherever it sees fit.
Indeed, it would seem that Plaintiff has treated the clause as
meaning that it can sue in whatever forum it determines might be
best for it at that moment. Suing Mr. Mesarc in Slovakia at the
very time that it was suing him in New Jersey may have been a
mistake – maybe one Sipko not talking to the other – but that
does not mean that it was not a conscious, corporate act with
consequences, either as a waiver or an estoppel. In addition to
denying remand, at the very least the two Defendants who have
been sued (Mr. Mesarc) or threatened with suit (Mr. Klasovsky),
in Slovakia should be dismissed.

Third, Plaintiff does not come to grips with its failure to
have its Slovakian employees sign their employment agreements in
Slovakian – a statutory requirement that is a fundamental aspect
of the Slovakian effort to protect its citizens from the type of

exploitation that has occurred here. There is something inherently unjust in allowing a US company to establish an illegal presence in Slovakia hoping to avoid Slovakian regulation of its employment practices and then purporting to insulate itself from that illegality by pointing to an illegal contract with a New Jersey forum and law clause. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), does not allow such a gambit. Plaintiff has not met its burden to prove a forum clause that must be enforced against all Defendants.

Fourth, Plaintiff cannot excuse the fact that it elected not to use the forms mandated by the Hague Convention. Although no return of service has been filed with the Court, the one English translation to which Koger refers states that the service was not in accordance with the Hague Convention and would not be valid under Slovak law. This is exactly what was told to the served Defendants. Their being handed the documents under subpoena in a Slovak court does not mean that they waived their treaty rights, as Slovak citizens, to proper service.

Fifth, Plaintiff made no more than a perfunctory response to the factors relevant in a personal jurisdiction and *forum non conveniens* analysis. If even one of the Defendants must be sued in Slovakia, then the entire suit must be dismissed. The only "evidence" presented by Plaintiff is a statement – neither an

4

affidavit nor the certification that may be substituted, *see* 28
U.S.C. § 1746 – that is not claimed to be on personal knowledge
(and it is not). George Sipko is silent. This action should be
dismissed.

POINT I

THE CROSS MOTION TO REMAND SHOULD BE DENIED.

A.   THE CROSS MOTION IS TOO LATE.

Motions to remand are governed by 28 U.S.C. § 1447(c):

> "A motion to remand the case on the basis of any defect
> other than lack of subject matter jurisdiction must be made
> within 30 days after the filing of the notice of removal
> under section 1446(a)."

Here, the Notice of Removal was filed and served on August 15,
2008 [Docket No. 1]. The motion to remand was filed on October
6, 2008 [Docket No. 5]. The motion to remand thus was filed 52
days after the Notice of Removal was filed and, therefore, was
out of time by 22 days – unless it was based on the lack of
subject matter jurisdiction (which it is not).

The Notice of Cross Motion says that it is based on "the
parties' contractually agreed upon exclusive forum selection
clause." [Docket No. 5 at 1.] The lack of subject matter
jurisdiction is not raised as a basis for the motion to remand,
nor could it be, since Plaintiff is a New Jersey citizen and all

5

Defendants are individuals who live in Slovakia. (Plaintiff has not contested their citizenship.)

It is undeniable that, as the Third Circuit has stated, "A forum selection clause does not oust a court of subject matter jurisdiction." *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1212 n.7 (3d Cir. 1991) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).

The "defect" claimed by Plaintiff thus is not "lack of subject matter jurisdiction." The cross motion to remand therefore is untimely and must be denied.

Defendants cannot imagine what Plaintiff could say to excuse missing so obvious a statutory deadline.

The statute was amended in 1996. As evidenced by the legislative history, the amendment was intended to clarify an error that some courts had made in interpreting the prior statutory language ("any defect in removal procedure") – apparently thinking that there was a gap between "removal procedure" and "subject matter jurisdiction." *See* H. R. Rep. No. 104-799 at 2 & 3. (Bartkus Reply Cert. Ex. A.)

The leading Third Circuit case on the issue, *Foster, supra*, was decided in 1991 – five years before the operative statutory amendment. Indeed, it is clear that the *Foster* case was one of

6

those "small number of cases," *id*. at 3, that misread Congressional intent and thus gave rise to the 1996 amendment.

This is not speculation. In *Foster*, the defendant had argued that the statute meant that all defects other than as to subject matter jurisdiction had to be raised within the first 30 days. *See* 933 F.2d at 1212. The Circuit reviewed the legislative history, which said in part: "The [1988] amendment provides a period of 30 days within which remand must be sought on any ground other then lack of subject matter jurisdiction." *Id., quoting* H. R. No. Rep. 889, 100th Cong. 2d Sess. 72. The Circuit then rejected reference to this legislative history because, it said, "the statute is clear on its face," 933 F.2d at 1213, and the 30 day limit in the <u>1988</u> amendment applied only to "defects in removal procedure," which it said did not include forum selection clauses. *Id.*

The 1996 amendment, intended to fill in the gap perceived by the Circuit, omits the reference to "removal procedure," so as to limit post-30 days motions to "lack of subject matter jurisdiction." Thus, the statute now has been conformed to the legislative history *Foster* rejected. Wright & Miller agrees. *See* 14C C. Wright, A. Miller, E. Cooper & J. Steinman, Federal Practice & Procedure 3d § 3739, 2008 Supp. at 355 (2008 Supp.) (referencing page 454 of the main volume: "The amendment …

eliminated the uncertainty, …"). The cross motion was 22 days late.

B.    PLAINTIFF CANNOT BASE REMAND ON A CLAUSE
      THAT IT HAS SELECTIVELY DISREGARDED – BY SUING
      AND THREATENING TO SUE DEFENDANTS IN SLOVAKIA.

As noted above, Plaintiff has treated the forum clause as giving it the flexibility to sue in Slovakia when it sees fit and to sue in New Jersey when it thinks that might be to its advantage. It thus has waived the "exclusive" nature of the forum clause as to all Defendants, generally, and to Mr. Mesarc and Mr. Klasovsky in particular.

Mr. Mesarc cannot understand why he may be sued in New Jersey based on an "exclusive" clause when Koger sued him at the same time, also on an employment issue, in Slovakia. If "waiver" is the wrong term to describe Koger's treatment of the "exclusivity" clause, it should be estopped from enforcing it against Defendants or, at least, the same person it is suing contemporaneously in Slovakia.

Mr. Klasovsky is no less befuddled why he can be threatened with suit in Slovakia when Koger feels like it, and then sued in New Jersey when Koger feels otherwise.

Plaintiff did not attempt to distinguish between a specific waiver as to Mr. Mesarc and Mr. Klasovsky and a general waiver as to the remaining Defendants, including Mr. Madej (as to whom

there is no contract clause before the Court). The waiver should apply to all – a defense to remand that applies regardless of whether a remand motion is made within 30 days or not.

C.   REMAND IS IMPROPER WHERE PLAINTIFF HAS NOT
     PLACED A SIGNED FORUM CLAUSE FOR MR. MADEJ BEFORE
     THE COURT OR A COMPLETE CONTRACT FOR MR. MESARC.

Remand cannot be based on a forum clause in a contract that Plaintiff cannot "find" (for Mr. Madej) or in a form that Plaintiff simply tacks onto a signature page that does not match (for Mr. Mesarc). That they signed "papers" does not mean that they signed papers with this clause in them, especially where they have denied being told or knowing that there was such a clause in anything they signed.

D.   REMAND IS IMPROPER BECAUSE THE "*BREMEN*" FACTORS WARRANT
     NON-ENFORCEMENT OF THE FORUM SELECTION CLAUSE.

As noted in the Defendant's Moving Brief at pages 19-25 in the *forum non conveniens* context, the United States Supreme Court, the Third Circuit and the New Jersey Supreme Court all have held that courts may decline to enforce a forum selection clause when it is "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. That analysis is equally valid in the context of a remand motion. Despite Defendants' invitation, Moving Brief at

3, Plaintiff's Brief ignores that law and the relevant facts in this case.[3]

For example, Plaintiff fails to address the injustice of its trying to enforce a forum clause that appears in a contract that Koger admits – by its silence – would be illegal in Slovakia because it was not translated into the Slovak language as required by Slovak statute. Usually, in enforcing a forum clause, a court will say it is the job of the "chosen" forum to determine facts regarding the validity of the entire contract. Here, however, Plaintiff has not contested the issue; this Court therefore should accept that the contracts were void and refuse to enforce any part of them. *See also* Moving Brief at 22 & n.4.[4]

---

[3] Plaintiff's referring to emails, the bulk of which are from non-moving Defendants, years after the Moving/Removing Defendants allegedly were presented with the contract on which Plaintiff relies, does not belie their inability to read and understand legal English at the time. There are only two emails from Mr. Klasovsky sent to announce his resignation in 2006 – three years later. [Docket No. 7-3 at 34 of 44.] There are three short emails from Mr. Madej (for whom there is no contract) from April and May 2001 [Docket No. 7-3, 36 of 44] – months after he started in December 2000. There are three very short emails from Mr. Mesarc (for whom there is no complete contract), again months after he started. [Docket No. 7-3 at 32 of 44.] None said they could not read English at all. Tellingly, George Sipko, with whom there were significant conversations, including regarding hiring, in Slovak, has not submitted an affidavit countering Defendants' testimony.

[4] Plaintiff's citation of *Park Inn Int'l, L.L.C. v. Mody Ents., Inc.*, 105 F. Supp. 2d 370 (D.N.J. 2000), is unavailing. This was a franchise case and did not address any of the illegal actions by Koger in this case. Nor does the Third Circuit's recent opinion in *Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3d

The contracts also would have been illegal in New Jersey because they were for hourly wages below the New Jersey minimum wage and "oppressive" pursuant to N.J.S.A. 34:11-56a3, a fact that also must be accepted as true since Plaintiff does not contend otherwise. (*See* Sipko Cert. ¶ 26, failing to deny initial compensation or providing documentation of "total" amounts paid, including office expenses and employer's taxes).

As Defendants showed in their Moving Brief, it is not enough for Plaintiff simply to say that courts require evidence of "fraud or overreaching" in the forum clause itself. First, Defendants have provided uncontested evidence of "overreaching" and fraud by omission. (Moving Brief at 20-23.) Moreover, to put it in the most direct terms: It would be unjust for Koger to benefit from a New Jersey forum clause inserted in an illegal Slovak contract in order to avoid Slovak regulation of its (unlawful) employment practices regarding Slovak citizens in Slovakia.

Referring to *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991), does not solve Plaintiff's problem. Not only was

---

Cir. 2008), not cited, assist Plaintiff in this regard, since it was addressed to Virgin Islands law and its discussion of an arbitration clause did not deal with a contract that would have been illegal under Virgin Island's law for not being in Spanish (there); the *Morales* contract was not challenged on the basis of fraud and overreaching, *see* 541 F.3d at __ & n.1. Moreover, the FAA "policy" favoring arbitration clauses is not relevant here.

*Carnival Cruise Lines* directed to different facts, *e.g.*, a cruise line ticket requiring international passengers to sue in a single forum (to avoid defending cases around the world) rather than an illegal contract requiring employees to defend an employer's litigation 4,250 miles outside their country of employment, but also *Carnival Cruise Lines* affirmed the vitality of the *Bremen* factors. Indeed, the Supreme Court in *Carnival Cruise Lines* distinguished cases, such as here, where there might be proof of serious inconvenience, where the party was not given notice of the clause and where the forum might be selected in bad faith to prejudice or inconvenience the other. *See* 499 U.S. at 595. This Circuit has referred to the *Bremen* factors several times since *Carnival* was decided in 1991. *See, e.g., Foster, supra*, 933 F.2d at 1219.

<u>POINT II</u>

<u>PLAINTIFF HAS WAIVED ITS ABILITY TO RELY ON, OR SHOULD BE ESTOPPED FROM RELYING ON, THE FORUM SELECTION CLAUSE</u>.

Regardless of the reason for the Court's determination that remand is not proper, it also should refuse to accept Plaintiff's mantra of the forum clause when addressing issues of personal jurisdiction and *forum non conveniens*, because the Plaintiff has waived its right to rely on that clause – where it has "found" a contract with such a clause – by suing and threatening to sue Defendants in Slovakia.

12

<u>POINT III</u>

<u>*GULF OIL* REQUIRES DISMISSAL</u>
<u>ON *FORUM NON CONVENIENS* GROUNDS</u>.

Without repeating the *forum non conveniens* analysis
previously submitted, Defendants note that Plaintiff has not
alleged that there is any "deficiency" of law or procedure that
would make Slovakia not an acceptable forum. Plaintiff's
suggesting that a NATO-EU country would not be appropriate,
without making a specific showing, is not sufficient.

The forum clause must be given little or no weight –
especially where it has been waived and in the absence of a
contract for Mr. Madej or a complete one for Mr. Mesarc.
Plaintiff also cannot succeed in its opposition to dismissal on
*forum non conveniens* grounds in light of the *Bremen* analysis
indicated above and in the Moving Brief.

Plaintiff also tries the tactic rejected in the *O'Donnell*
case, saying that "all" of its officers and "many" of its
employees are located in New Jersey (Opp. Brief at 20), without
identifying <u>any</u> that might be relevant to this case or
acknowledging that most Koger employees were in Slovakia or
Dublin, that Messer's Sipko are Slovakian nationals who
frequently travel to Slovakia to run that business or that many
of the communications and witnesses actually are in Ireland. In
contrast, Defendants identified not only the Sipko's but also

13

Peter Olejar, Peter Focko and JUDr. Anna Rozmusova, Plaintiff's Slovakian attorney (who sued and threatened suit) as witnesses being in Slovakia and not subject to a New Jersey subpoena. Defendants' work files are in Slovakia and would be needed to show the confidential data to which each Defendant had access and which matches ManTra's code (none does).

On page 21 of its Brief, Plaintiff states: "The locus of this action is New Jersey. The Defendants worked for Koger, a New Jersey company." Of course, Plaintiff omitted that they worked solely in Slovakia, and that Koger's choice of a New Jersey forum is intended to avoid scrutiny as to Slovakian employment statutes and regulations.

Plaintiff's assertion that this Court would be more able to apply New Jersey law presumes that New Jersey law is applicable. If there is no enforceable choice of law clause (*e.g.*, Mr. Madej), clearly Slovakian law must apply; to risk repeating, the Defendants are Slovak employees working in a Slovak office and hired by a Slovak national, such as George Sipko. Even if there is a contract with a choice of law clause, as Defendants showed at pages 30 to 31 of their Moving Brief, this one should not be enforced.

POINT IV

PLAINTIFF CANNOT EXCUSE ITS FAILURE TO COMPLY WITH THE HAGUE
SERVICE CONVENTION BY, *E.G.*, USING THE MANDATORY FORMS.

Plaintiff does not explain why it did not use the three-part form mandated by the Hague Convention or the USM-94 derivation or why the translation was not certified.

Plaintiff argues that, despite the error, a local authority's handing pleadings to a defendant is presumptive of proper service. This is unavailing on three fronts.

First, the Convention does not require a state to screen documents to be served. *See* Practical Handbook on the Operation of the Hague Service Convention at 46 ¶ 124 (2006). (Bartkus Reply Cert. Ex. B.) Although Defendants' Brief expressed the thought imprecisely (by omitting the phrase "to which it does not object" at the bottom of page 12), the regime of the Convention is that states may not raise form objections in order to avoid serving documents. Article 4 says that it must notify a requesting party of a perceived defect; however, they cannot refuse to serve the documents unless a defect offends a matter of national policy. As the Handbook notes: "[172] Mandatory use of the model Request form (Art. 3(1)) makes that review easier. … [173] The practice of Central Authorities is indeed fairly liberal. … [174] The Central Authority of the requested State may refuse to comply with the request only if it deems that

15

compliance would infringe upon the sovereignty and security of the requesting State …."

Second, this Court's Docket shows that Plaintiff has yet to file any proof of service as to any Defendant, whether the nonexistent, required Hague Certificate or otherwise. Thus, even if a "filed" Hague Certificate might constitute presumptive evidence of service, Plaintiff's failure to use the mandatory form means that the certificate that gives rise to a presumption cannot be filed here. In cases that refer to such a presumption, the mandatory forms always have been used. *E.g., Resource Trade Finance, Inc. v. PMI Alloys, LLC*, 2002 U.S. Dist LEXIS 14740, at *12, No. 99-5156 (S.D.N.Y. Aug. 12, 2002). Without a Hague form, there can be no "presumption" of regularity based on use of such a form.

But even if Plaintiff had filed a proper return of service, that "presumption" is overcome here: (a) Plaintiff admits that it did not serve the mandatory forms, so this Court need not "go behind" (*see Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995)) the non-existent Hague Certificate to determine something (*i.e.*, failure to comply with the mandate as to forms) that is admitted; (b) the court in Slovakia told each Defendant that the service was invalid under Slovak law (Madej Cert. ¶ 7; Klasovsky

Cert. ¶ 6; Mesarc Cert. ¶ 4); and (c) the statement provided by
Koger on this motion acknowledges that the mandatory forms were
not used and that service is not valid:

> "However, his application was not sent on the prescribed
> forms. … Such serving would be in the territory of the
> Slovak Republic without any legal effects …."

(Wapner Cert. Ex. D at 3 of 4.) The Slovak court's statement as
to what might be legal under New Jersey law is not only without
competent foundation, it is irrelevant: the Convention requires
compliance with procedures established for all signatories to
the Convention; any judgment from this Court might not be
enforceable in Slovakia because Slovakia's court already has
said service was invalid.

Third, Plaintiff's suggesting that the served Defendants
waived these service defects by "voluntarily" accepting the
documents, Opp. Brief at 10, is contrary to fact and fundamental
fairness. As shown in Exhibit D to the Wapner Certification,
they did protest the service by asking that the court note that
the forms were not correct and stating that the translation was
not certified. But even if they had not protested then, they
challenged service in this Court at the earliest date by moving
to dismiss. Receiving documents subject to compulsory process
under protest – or risking punishment under Slovak law – is not
"voluntary" acceptance and waiver. Unsupported, out-of-circuit

17

and off-point *dictum* in *FRC Int'l, Inc. v. Taifun*, No. 01-7533, 2002 U.S. Dist. LEXIS 17559, at *27 (N.D. Ohio Sept. 4, 2002), is not to the contrary; that court noted that the defendant did not protest – which of course was not the situation here.

To the extent that earlier cases required a finding of prejudice in order to overcome any presumption, that out-of-circuit statement is not relevant where the defect is admitted. Moreover, such cases were before *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), which emphasized the need for service of process before the court may assert authority over a defendant.

POINT V

STATE SERVICE RULES REQUIRE COMPLIANCE
IN THIS CASE, NOT ANOTHER CASE.

Plaintiff excuses not complying with N.J. Rule 4:4-4(b)(1)(affidavit of due diligence) in this case because it filed one in another case. That is not what the rule says.

POINT VI

THERE IS NO PERSONAL JURISDICTION OVER DEFENDANTS.

Plaintiff does not even attempt to address the Court's lack of personal jurisdiction over Defendants – other than Koger's worn mantra, referring to the forum selection clause in a contract that, *inter alia*, is illegal under Slovakian law, was not signed by all Defendants, was waived and is unenforceable

under *Bremen*. Again, an individualized analysis is required, both as to each count and as to each of the three Defendants who have moved to dismiss

There is no contract before the Court as to Mr. Madej; Mr. Mesarc's signature page does not match the "body"; the forum clause was waived as to Mr. Mesarc and Mr. Klasovsky; and it would be unjust to enforce the clause under the circumstances here even in the absence of these facts.

Other than relying on the forum clause, Plaintiff's assertion of specific personal jurisdiction for its breach of contract claims relies on three theories: contracting with a New Jersey company, communicating with a New Jersey company in the course of that contractual relationship; and visiting New Jersey as required by Plaintiff.

In support of the first theory, Plaintiff cites *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317 (1989), and *Creative Business Decisions, Inc. v. Magnum Commc'ns. Ltd., Inc.*, 267 N.J. Super. 560 (App. Div. 1993). In both, the courts noted that defendant had initiated the contact with New Jersey, which is not the case here. All Defendants here were living in Slovakia when they were approached (in Slovakia) by George Sipko or another Koger Slovakia employee. *See Lebel*, 115 N.J. at 324-25;

19

*Creative*, 267 N.J. Super. at 571 ("defendant reached out beyond Georgia").

The first theory is even more troubling (for Plaintiff's position), however, because Defendants' employer really was a company with its office in Slovakia. Indeed, at times it may have had more employees than the Paramus office to which Plaintiff likes to refer. To say that "fair play and substantial justice" is satisfied by requiring Defendants to be sued in New Jersey ignores reality and the primacy (as to Defendants) of Koger's operations in Kosice.

As to the second theory, Plaintiff provides few if any facts on which the Court could make a finding in its favor with respect to any given individual. *See, Lebel*, 115 N.J. at 325 ("mere transmittal of messages"). Mr. Sipko does not assert specific oral communications between any Defendant and New Jersey. Mr. Mesarc says he took directions from specific persons in Kosice. (Mesarc Cert. ¶ 11.) The Mesarc e-mails provided by Mr. Sipko were with Dublin. Mr. Madej says his instructions, also, were from people in Kosice. (Madej Cert. ¶ 12.) The Madej e-mails provided by Mr. Sipko were with Dublin. Mr. Klasovsky said his primary contact was with people in the Slovakian office in Kosice and with George Sipko "now and then." (Klasovsky Cert. ¶ 12.) The only Klasovsky e-mail presented by Mr. Sipko is his

resignation. (The other Defendants in the emails have not moved
to dismiss, nor are they yet required to do so.)

As to the third theory, only two of the three Moving/
Removing Defendants spent one or two weeks (total) in New Jersey
– for no apparent purpose. Mr. Klasovsky has never been to New
Jersey. (Klasovsky Cert. ¶ 3.)

Even if there were specific jurisdiction as to the contract
claims as to Defendants who had visited with Koger in New Jersey
regarding performance of their contract, that can not be the
case for Mr. Klasovsky, who never has been to New Jersey and had
virtually no contact with New Jersey in the performance of his
work; the two emails Plaintiff submits were regarding his
resignation, and one of those was to Dublin.

Moreover, there can be no jurisdiction as to the tortious
interference claim as to anyone. Plaintiff has not presented any
evidence to meet the burden it faces to show the elements of
"effects" jurisdiction, especially that any of these three aimed
their conduct at New Jersey or that Plaintiff felt the brunt of
the harm in New Jersey. *See* Bartkus Cert. Ex. J, *Koger, Inc. v.
O'Donnell*, R&R [Docket No. 26] at 25, No. 07-3091 (D.N.J. Sept.
28, 2007) (finding no "effects" jurisdiction under parallel
facts).

<u>POINT VII</u>

THE NON-COMPETE AND TORTIOUS INTERFERENCE CLAIMS
<u>SHOULD BE DISMISSED</u>.

If this case is to proceed in this forum, it should be
reduced to the essential (albeit misplaced) claim: that
Defendants somehow are using "confidential" information, gained
about Koger's NTAS computer program, now that they are working
for a company that provides computer services to an Irish
company competing with Koger in the hedge fund administration
market. When the lack of such information is proved in Koger's
Irish case, this case can be dismissed.

The "interference" claim is nothing more than a breach of
contract claim in "tort" clothing, apparently directed to a
hypothetical loss of business (since Plaintiff does not identify
any actual client or prospective client that was lost because of
actions of these Defendants, who were mere programmers).

If there is more to this claim, Plaintiff does not provide
any details in the Complaint to show it is plausible. *See Bell
Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). It remains
speculative as to how programmers can interfere with a
contractual relationship involving NTAS, which already is on the
market and being sold around the world in competition with many
other similar programs. That something may be "obvious" to
Plaintiff (Opp. Brief at 26), does not mean that facts were

22

alleged to support the *Twombly* requirement; hypothetical clients that "may" be lost are not actionable. Plaintiff has not provided anything to raise its pleading above the "conclusory" assertion of the elements of a claim, without facts, rejected in *Twombly, e.g.,* 127 S. Ct. at 1968.

The non-competition claim is clearly inappropriate as to Mr. Klco, since Plaintiff admits that his contract with Koger does not have a non-compete clause (Opp. Brief at 5 n.1), and for Mr. Madej, for whom Plaintiff admits it has no contract (*id.* at 6 n.2). Moreover, Plaintiff does not provide any non-speculative details that might substantiate the allegations to support a non-compete claim, against low-level employees, that is anything more than a "bludgeon". The e-mails submitted by Mr. Sipko, in Exhibit B to his Certification, illustrate the rather mundane programming work they performed.

<u>CONCLUSION</u>

Upon denying Plaintiff's cross motion to remand, this Court should grant Defendants' motion to dismiss.

Although Plaintiff bears the burden to show an enforceable contract, its "proofs" on this motion are sorely lacking. George Sipko is silent, and Ras Sipko's statement is not made on personal knowledge or in affidavit form or federal alternative in accordance with 28 U.S.C. § 1746. Before the Court may give

Plaintiff's "facts" regarding contract formation, personal jurisdiction, overreaching or otherwise, any credence, there must be discovery of Plaintiff and an in-person evidentiary hearing.

Dated: October 14, 2008

Respectfully submitted,

DILLON, BITAR & LUTHER, L.L.C.

By: _____s/_____
        Robert E. Bartkus
        rbartkus@dbl-law.com